UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

WENDY MIRANDA,

                                      Plaintiff,     **AMENDED COMPLAINT**

        -against-                           16 CV 4933 (MKB) (VMS)

THE CITY OF NEW YORK, P.O. DAVID          **JURY TRIAL DEMANDED**
QUATTROCCHI, SGT. ROBERT AGATE, and P.O.s
JOHN DOE #1 through #10, individually and in their
official capacities, (the name John Doe being fictitious, as
the true names are presently unknown),

                                    Defendants.
--------------------------------------------------------------------X

       Plaintiff WENDY MIRANDA, by her attorney, ROSE M. WEBER, complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

       2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

       3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

       4.     Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

**JURY DEMAND**

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

6.      Plaintiff WENDY MIRANDA is a Latina, a citizen of the United States, and at all relevant times a resident of the City and State of New York.

7.      Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.      That at all times hereinafter mentioned, the individually named defendants P.O. DAVID QUATTROCCHI, SGT. ROBERT AGATE, and P.O.s JOHN DOE #1 through #10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## **INCIDENT FACTS**

13. On May 29, 2015, at approximately 6:00 p.m., plaintiff WENDY MIRANDA was lawfully present in the vicinity of Fulton and Linwood Streets, in the County of Kings, in the City and State of New York.

14. At aforesaid time and place, plaintiff WENDY MIRANDA was lawfully participating in the filming of a music video.

15. A large crowd began to gather and, upon information and belief, neighborhood residents called the police.

16. A large number of police officers arrived on the scene.

17. As the police moved in, numerous individuals began to run from the scene, some discarding weapons and other contraband as they ran.

18. Defendant police officers were aware that weapons and other contraband had been discarded haphazardly.

19. Defendant police officers recovered a handgun from under plaintiff WENDY MIRANDA's parked car.

20. Plaintiff WENDY MIRANDA was nowhere near the car, and defendant police officers were aware of this fact.

21. Defendant police officers knew or should have known that plaintiff WENDY MIRANDA had not placed the weapon under the car and that the weapon did not belong to her.

22. Nonetheless, when plaintiff WENDY MIRANDA went to move her car, defendants placed her under arrest despite their knowledge that they lacked probable cause to do so.

23. Defendants deliberately handcuffed plaintiff WENDY MIRANDA more tightly and violently than is authorized or required by proper NYPD procedure.

24. At the time of the incident, plaintiff WENDY MIRANDA stood approximately 5'4" and weighed approximately 130 pounds.

25. Plaintiff WENDY MIRANDA did not resist arrest, attempt to flee, or present any sort of threat to defendants, all of whom were significantly larger and stronger than she was.

26. There was no justification for the force with which the handcuffs were applied and tightened.

27. Plaintiff WENDY MIRANDA repeatedly advised defendants that the handcuffs were too tight and were causing her pain.

28. Defendants refused to remove or adjust the handcuffs.

29. As a result of being handcuffed too tightly and violently, plaintiff WENDY MIRANDA sustained bruises and scrapes to her wrists that were visible for more than a week, tenderness to the touch lasting approximately two weeks, and pain each time she moved her right wrist, also lasting approximately two weeks.

30. Rather than place plaintiff WENDY MIRANDA in a nearby police vehicle, defendant police officers deliberately paraded her down the block while numerous people filmed the unnecessary and humiliating perp walk on their phones.

31. Defendants transported plaintiff WENDY MIRANDA to the 75th Precinct of the New York City Police Department in Brooklyn, New York.

32. At the precinct, defendants interrogated plaintiff WENDY MIRANDA for approximately ten hours without ever reading her her rights.

33. Plaintiff WENDY MIRANDA was held and detained in custody for approximately twenty-two hours before being released when the Kings County District Attorney's Office declined to prosecute.

34. Articles about plaintiff WENDY MIRANDA's arrest appeared in, *inter alia*, the New York Daily News, the New York Post, the Gothamist, Metro NY, Billboard, XXL Magazine, AllHipHop.com, GunViolenceArchive.org, and Hot97.com.

35. As a result of the foregoing, plaintiff WENDY MIRANDA sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of her constitutional rights.

## MONELL FACTS

36. Both before and after the arrest of plaintiff WENDY MIRANDA, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

37. Members of the New York City Police Department have a custom and practice of arresting law-abiding citizens on pretextual charges in order to satisfy arrest quotas.

38. The existence of the aforesaid custom and practice may be inferred from:

- NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

- the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

- the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

- the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

- the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

- audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

- testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

- the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

- Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

- the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says*, Village Voice, June 7, 2010);

- the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police

officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*, http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

- a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

- testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

- the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

- statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

- allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was*

*Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016); and

- allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016).

39. The aforesaid custom and practice ran rampant throughout the entire City, in Brooklyn in particular, and specifically within the 75th Precinct (Robert Gearty, *High-Ranking Cop Testifies He Set Monthly Quotas at Brooklyn Precinct*, N.Y. Daily News, Mar. 22, 2013).

40. Upon information and belief, as a direct result of these well-documented quotas and the repercussions for not meeting them, defendants in the instant matter felt pressure to arrest plaintiff WENDY MIRANDA without probable cause and to manufacture evidence against her.

## FIRST CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

41. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

42. As a result of the aforesaid conduct by defendants, plaintiff WENDY MIRANDA was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

43. As a result of the foregoing, plaintiff WENDY MIRANDA's liberty was restricted for an extended period of time, she was put in fear for her safety, and she was humiliated, without probable cause.

**SECOND CLAIM FOR RELIEF**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**

44.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45.     The level of force employed by defendants was objectively unreasonable and in violation of plaintiff WENDY MIRANDA's constitutional rights.

46.     As a result of the aforementioned conduct of defendants, plaintiff WENDY MIRANDA was subjected to excessive force and sustained physical injuries.

**THIRD CLAIM FOR RELIEF**
**MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983**

47.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48.     Defendants issued legal process to place plaintiff WENDY MIRANDA under arrest.

49.     Defendants arrested plaintiff WENDY MIRANDA in order to obtain a collateral objective outside the legitimate ends of the legal process, specifically to increase their job security and avoid disciplinary action by complying with mandatory arrest quotas.

50.     Defendants acted with intent to do harm to plaintiff WENDY MIRANDA without excuse or justification.

**FOURTH CLAIM FOR RELIEF**
**FAILURE TO INTERVENE**

51.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "50" with the same force and effect as if fully set forth herein.

52. Each defendant not directly involved in constitutional violations had an affirmative duty to intervene on plaintiff WENDY MIRANDA's behalf to prevent the violation of her constitutional rights.

53. Each defendant not directly involved in constitutional violations failed to intervene on plaintiff WENDY MIRANDA's behalf to prevent the violation of her constitutional rights despite having had a realistic opportunity to do so.

54. As a result of the aforementioned conduct of defendants, plaintiff WENDY MIRANDA's constitutional rights were violated and she was falsely arrested and subjected to excessive force and sustained physical injuries.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "54" with the same force and effect as if fully set forth herein.

56. Defendants arrested and incarcerated plaintiff WENDY MIRANDA in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

57. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

58. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

59. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, arresting law-abiding citizens on pretextual charges in order to satisfy arrest quotas.

60. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff WENDY MIRANDA.

61. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff WENDY MIRANDA as alleged herein.

62. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff WENDY MIRANDA as alleged herein.

63. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff WENDY MIRANDA was falsely arrested and incarcerated.

64. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff WENDY MIRANDA.

65. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff WENDY MIRANDA's constitutional rights.

66. All of the foregoing acts by defendants deprived plaintiff WENDY MIRANDA of federally protected rights, including, but not limited to, the right:

    A. Not to be deprived of liberty without due process of law;

    B. To be free from seizure and arrest not based upon probable cause;

    C. Not to have excessive force imposed upon her;

    D. To be free from malicious abuse of process;

    E. Not to have cruel and unusual punishment imposed upon her; and

    F. To receive equal protection under the law.

67. As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of one million dollars ($1,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of one million dollars ($1,000,000.00).

**WHEREFORE**, plaintiff WENDY MIRANDA demands judgment in the sum of one million dollars ($1,000,000.00) in compensatory damages and one million dollars ($1,000,000.00) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:    New York, New York
             December 28, 2016

                                                                     /s
                                          ROSE M. WEBER (RW 0515)
                                          30 Vesey Street, Suite 1801
                                          New York, NY 10007
                                          (212) 748-3355